Case 2:19-cv-00030 Document 13 Filed on 06/17/19 in TXSD Page 1 of 19

United States District Court
Southern District of Texas
**ENTERED**
June 17, 2019
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION

| | | |
|---|---|---|
| ISRAEL[1] ORTIZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 2:19-CV-30 |
| | § | |
| SGT. GUZMAN, *et al*, | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND RECOMMENDATION**
**TO DISMISS CERTAIN CLAIMS AND TO RETAIN CASE**

This civil rights action was filed by a Texas state prisoner pursuant to 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996), any prisoner action brought under federal law must be dismissed if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. See 42 U.S.C. § 1997e(c); 28 U.S.C. §§ 1915(e)(2), 1915A. Plaintiff Israel Ortiz's action is subject to screening regardless whether he prepays the entire filing fee or proceeds as a pauper. *Ruiz v. United States,* 160 F.3d 273, 274 (5th Cir. 1998) (per curiam); *Martin v. Scott*, 156 F.3d 578, 580 (5th Cir. 1998) (per curiam). Plaintiff's *pro se* complaint must be read indulgently, *Haines v. Kerner*, 404 U.S. 519, 520 (1972), and his allegations must be accepted as true, unless they are clearly irrational or wholly incredible, *Denton v. Hernandez,* 504 U.S. 25, 33 (1992).

---

[1] Plaintiff appears to spell his first name "Israel" and "Israel" Ortiz, however in his signature he clearly refers to himself as "Israel." The Clerk shall change the docket to reflect that the correct spelling of Plaintiff's name is the common spelling used for the name "Israel." If the court is wrong, Plaintiff can file a motion requesting that the name be amended back to "Isreal."

Applying these standards, it is respectfully recommended that certain retaliation claims raised by Plaintiff be retained against one defendant in her individual capacity. It is respectfully recommended further that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. Lastly, it is respectfully recommended that Plaintiff's remaining claims against the remaining defendants be dismissed for failure to state a claim and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B) and 1915A(b)(1).

## I. JURISDICTION.

The Court has federal question jurisdiction over this civil rights action pursuant to 28 U.S.C. § 1331.

## II. BACKGROUND FACTS AND PLAINTIFF'S ALLEGATIONS.

Plaintiff is a prisoner in the Texas Department of Criminal Justice, Criminal Institutions Division (TDCJ-CID) and is currently housed at the McConnell Unit in Beeville, Texas. The facts giving rise to Plaintiff's claims in this civil rights action occurred in connection with his assignment to the McConnell Unit. Plaintiff filed his original complaint on January 28, 2019, naming the following defendants: (1) Sergeant C. Guzman; (2) Captain Ambriz; and (3) Assistant Warden K. Putnam. Plaintiff alleges that Defendants retaliated against him and violated his due process rights. He does not indicate whether he sues each defendant in their individual capacities, their official capacities, or both. Plaintiff seeks declaratory, injunctive, and monetary relief.

On February 28, 2019, a *Spears*[2] hearing was conducted where Plaintiff was given an opportunity to explain his claims. The following allegations were made in Plaintiff's original complaint (D.E. 1) or at the hearing.

Plaintiff first arrived at the McConnell Unit in 2009. Plaintiff is currently housed in administrative segregation. On February 21, 2017, a disciplinary case was brought by Officer Contreras against Plaintiff (Case No. 20170183409). Officer Contreras alleged in the disciplinary case that Plaintiff had masturbated in the public shower. After the disciplinary case was brought, Plaintiff complained that it was in retaliation for Plaintiff exercising his rights created by the Prison Rape Elimination Act (PREA). PREA authorizes Plaintiff to shower and perform bodily functions without female officers viewing or attempting to view his genitals.

Sgt. Guzman investigated Plaintiff's disciplinary case. Plaintiff explained to Sgt. Guzman that PREA and prison policies prevented Officer Contreras from looking into the shower area while Plaintiff showered with the door closed. Plaintiff's genitals were never exposed to public view. Sgt. Guzman told Plaintiff that the shower camera would not be reviewed and that Officer Contreras's report constituted the evidence in the case. Plaintiff denied committing the act of masturbation and claimed that Officer Contreras's charge was false.

On February 28, 2017, Lt. Lopez conducted the disciplinary hearing in Case No. 20170183409. Plaintiff argued that Officer Contreras's actions constituted a PREA

---

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985*); see also Eason v. Holt*, 73 F.3d 600, 603 (5th Cir. 1996) (stating that testimony given at a *Spears* hearing is incorporated into the pleadings).

violation. He also requested Lt. Lopez to review the camera footage of the incident. Lt. Lopez found Plaintiff guilty of the charge without considering the camera's footage as evidence. Sgt. Guzman recommended to Lt. Lopez that Plaintiff be placed on thirty days property restrictions. Lt. Lopez imposed punishment against Plaintiff in the form of 30 days of property restrictions and thirty days loss of commissary and recreation. The conviction was upheld on appeal.

After the disciplinary hearing took place, Plaintiff informed Sgt. Guzman that he would write a grievance against her for participating in the disciplinary hearing process, denying Plaintiff review of the shower cameras, and violating PREA. Plaintiff then filed Grievance No. 2017096017, explaining that the shower door was closed in accordance with PREA standards and that the camera footage would support Plaintiff's claims.

On March 19, 2017, Sgt. Guzman further retaliated against Plaintiff for filing Grievance No. 2017096017 by targeting Plaintiff, pulling him from the line for a hair-cut, escorting Plaintiff to the rescue yard, and locking Plaintiff inside of it. Sgt. Guzman then proceeded to conduct an egregious cell search, to damage Plaintiff's property while trashing it all over the cell, and to file a false disciplinary case. Sgt. Guzman also confiscated several items from Plaintiff's cell, including his commissary. Sgt. Guzman told Plaintiff that she took all these actions against Plaintiff because he had filed a grievance against her.

Sgt. Guzman subsequently brought a false disciplinary case against Plaintiff (Case No. 20170212635), charging Plaintiff with tampering with a locking mechanism and possession of contraband consisting of certain chemicals and tattoo supplies. Sgt.

Guzman took the contraband and other property from Plaintiff, and the contraband was subsequently destroyed. On March 24, 2017, Capt. Ambriz conducted a disciplinary hearing in this case. Plaintiff explained Sgt. Guzman's retaliatory motive and requested Capt. Ambriz to review the camera footage of the tampering incident. After reviewing the camera footage, Capt. Ambriz found Plaintiff guilty of the charged offenses and imposed punishment that included the loss of forty-five days of good time credits.

Plaintiff later complained that Capt. Ambriz had altered evidence involving notice of the time of the offense in order to document that Plaintiff had 24-hour notice to prepare for his disciplinary hearing. He appealed Capt. Ambriz's guilty verdict in Step 1 Grievance (No. 2017110776). Defendant Putnam responded to the grievance and affirmed the guilty verdict and the following punishments: loss of line class reduction, loss of privileges, loss of custody class status from G2 to G4, and loss of good time credits. In Plaintiff's Step 2 grievance, however, Capt. Ambriz's guilty verdict was overturned. Plaintiff believes that Assistant Warden Putnam should be responsible for the actions of the subordinate officers.

Sergeant Guzman continued to retaliate against Plaintiff by taking his offender ID card on March 27, 2017 and failing to return it. The taking of the ID card interfered with Plaintiff's ability to be issued meals, lay-ins, receive mail, check out books, and participate in recreation. According to Plaintiff, it took about a month to get his ID replaced. During this time, Plaintiff was denied a meal about four or five times. Plaintiff filed grievances against Sgt. Guzman for taking his ID card.

Sergeant Guzman retaliated against Plaintiff on March 3, 2018 by ordering Officer Garcia to seize Plaintiff's drinking cup purchased for $1.00 without probable cause, which Plaintiff had just bought from the commissary. Plaintiff testified at the *Spears* hearing that various other commissary items worth $100 also were taken from Plaintiff. Sgt. Guzman refused Plaintiff's requests for return of the drinking cup or the issuance of confiscation papers. Plaintiff filed a Step 1 Grievance (No. 2018096222) against Sgt. Guzman for retaliating her in the taking of his drinking cup.

Plaintiff has not filed any suit in state court to recover either confiscated property or the value of any the items taken, lost, or destroyed due to the actions of Sergeant Guzman.

### III. LEGAL STANDARD.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins,* 487 U.S. 42, 48 (1988); *see also Biliski v. Harborth*, 55 F.3d 160, 162 (5th Cir. 1995). An action may be dismissed for failure to state a claim when the complaint does not plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal,* 556 U.S. at 678. The complaint must be liberally construed

in favor of the prisoner and the truth of all pleaded facts must be assumed. *Oliver v. Scott*, 276 F.3d 736, 740 (5th Cir. 2002).

A claim is frivolous if it has no arguable basis in law or fact. *Neitzke v. Williams,* 490 U.S. 319 (1989). A claim has no arguable basis in law if it is based on an indisputably meritless legal theory, "such as if the complaint alleges the violation of a legal interest which clearly does not exist." *Davis v. Scott,* 157 F.3d 1003, 1005 (5th Cir. 1998).

## IV. DISCUSSION.

### A. Official Capacity Claims

A suit against a state officer in his or her official capacity is effectively a suit against that state official's office. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). The Eleventh Amendment, however, bars claims for money damages against a state or state agency. *See Seminole Tribe of Florida v. Florida*, 517 U.S. 44, 54 (1996); *Aguilar v. Texas Dep't of Criminal Justice,* 160 F.3d 1052, 1054 (5th Cir. 1998). As such, an action for monetary damages against a state official in his or her official capacity is one against the state itself and is barred by the Eleventh Amendment. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985). Indeed, the Fifth Circuit has extended the Eleventh Amendment immunity specifically to TDCJ-CID officers and officials acting in their official capacities. *See Oliver*, 276 F.3d at 742 (recognizing that the Eleventh Amendment bars prisoner's suit for money damages against prison officials in their official capacities).

To the extent Plaintiff sues Defendants in their official capacities for money damages, those claims are barred by the Eleventh Amendment. Accordingly, it is respectfully recommended that Plaintiff's claims for money damages against Defendants in their official capacities be dismissed with prejudice.

**B.     Assistant Warden Putnam**

"Personal involvement is an essential element of a civil rights cause of action." *Thompson v. Steele,* 709 F.2d 381, 382 (5th Cir. 1983). There is no vicarious or *respondeat superior* liability of supervisors under section 1983. *Thompkins v. Belt,* 828 F.2d 298, 303-04 (5th Cir. 1987). *See also Carnaby v. City of Houston,* 636 F.3d 183, 189 (5th Cir. 2011) (the acts of subordinates do not trigger individual § 1983 liability for supervisory officials). A supervisory official may be held liable only if "(1) he affirmatively participates in the acts that cause the constitutional deprivation, or (2) he implements unconstitutional policies that causally result in the constitutional injury." *Porter v. Epps,* 659 F.3d 440, 446 (5th Cir. 2011).

Plaintiff believes that Assistant Warden Putnam should be responsible for the actions of the subordinate officers. However, accepting Plaintiff's allegations as true, they indicate that Assistant Warden Putnam had no personal involvement in the events described by Plaintiff. Plaintiff, therefore, has failed to allege a plausible claim against Assistant Warden Putnam in his role as a supervisory official.

Plaintiff's allegations against Assistant Warden Putnam center on his dissatisfaction with his decision to reject one of Plaintiff's grievances. Such allegations,

however, fail to state a cognizable constitutional claim. *See Jones v. North Carolina Prisoners' Labor Union, Inc.,* 433 U.S. 119, 138 (1977) (Burger, C.J., concurring) (applauding institution of grievance procedures by prisons but noting that such procedures are not constitutionally required); *Geiger v. Jowers,* 404 F.3d 371, 374 (5th Cir. 2005) (prisoners do not have a federally protected liberty interest in having grievances investigated, let alone resolved in their favor); *Mahogany v. Miller*, 252 F. App'x 593, 595 (5th Cir. 2007) (holding that the plaintiff had no actionable § 1983 claim based on prison officials' failure to process his grievances because he had no protected liberty interest in the processing of grievances). Accordingly, it is respectfully recommended that Plaintiff's claim against Assistant Warden Putnam be dismissed with prejudice.

### C. PREA

Liberally construed, Plaintiff claims that Sgt. Guzman violated PREA when she looked into the shower area and viewed Plaintiff's genitals while he was showering. "While it is true that PREA was enacted in an effort to reduce the occurrence of rapes in prisons by developing and implementing national standards and "increas[ing] the accountability of prison officials who fail to detect, prevent, reduce, and punish prison rape," nowhere in PREA is there language to suggest that it was created to provide a private cause of action or a federal right that could be enforced in a section 1983 action." *Herndon v. Tanner*, No. 17-02350, 2017 WL 3841836, at *4 (E.D. La. Jul. 26, 2017) (citing 42 U.S.C. §§ 15602, 15605; *Krieg v. Steele*, 599 F. App'x. 231, 232-33 (5th Cir. 2015)). Because here is no basis for a private suit, the undersigned recommends that

Plaintiff's PREA claim be dismissed with prejudice as frivolous and/or for failure to state for relief.

### D. Retaliation

Plaintiff claims that Sgt. Guzman has engaged in several retaliatory acts against him. Retaliation is not expressly referred to in the Constitution; however, it is nonetheless actionable because retaliatory actions may tend to chill an individual's exercise of constitutional rights. *See Perry v. Sindermann*, 408 U.S. 593, 597 (1972). Retaliation is actionable "only if the retaliatory act 'is capable of deterring a person of ordinary firmness from further exercising his constitutional rights.'" *Bibbs v. Early*, 541 F.3d 267, 270 (5th Cir. 2008) (quoting *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006)).

The purpose of allowing retaliation claims under § 1983 is to ensure that prisoners are not unduly discouraged from exercising their constitutional rights. *Morris*, 449 F.3d at 686. Thus, "[a] prison official may not retaliate against or harass an inmate for exercising the right of access to the courts, or for complaining to a supervisor about a guard's misconduct." *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995). "Filing grievances and otherwise complaining about the conduct of correctional officers through proper channels are constitutionally protected activities, and prison officials may not retaliate against inmates for engaging in such protected inmates." *Reese v. Skinner*, 322 F. App'x 381, 383 (5th Cir. 2009) (citing *Morris*, 449 F.3d at 684).

The Fifth Circuit has emphasized that "prisoners' claims of retaliation are regarded with skepticism and are carefully scrutinized by the courts." *Adeleke v.*

*Fleckenstein*, 385 F. App'x 386, 387 (5th Cir. 2010) (citing *Woods*, 60 F.3d at 1166). In addition, the Fifth Circuit has concluded that some acts, even though they may be motivated by retaliatory intent, are so *de minimis* that they would not deter the ordinary person from further exercise of his rights. *Morris*, 449 F.3d at 686. Such acts do not rise to the level of constitutional violations and cannot form the basis of a § 1983 claim. *Id.*

To state a valid § 1983 claim for retaliation, "a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones*, 188 F.3d at 324-25 (citing *McDonald v. Stewart*, 132 F.3d 225, 231 (5th Cir. 1998)). An inmate must allege more than his personal belief that he is the victim of retaliation. *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (citation omitted). "Mere conclusory allegations of retaliation will not be enough to withstand a proper motion for dismissal of the claim." *Jones*, 188 F.3d at 325. The inmate must produce direct evidence of motivation or a chronology of events from which retaliation may be inferred. *Id.* In other words, a successful claim of retaliation requires a showing that, but for some retaliatory motive, the complained of adverse incident would not have occurred. *Woods*, 60 F.3d at 1166.

Plaintiff claims that Sgt. Guzman brought a false disciplinary case against him on February 21, 2017 (Disciplinary Case No. 20170183409) in retaliation for Plaintiff exercising his PREA rights in the prison shower. As discussed above, "the invocation of a specific constitutional right is the first element of a retaliation claim." *Williams v. Sellers*, No. H-11-4287, 2014 WL 794191, at *11 (S.D. Tex. Feb. 26, 2014). Plaintiff,

however, did not claim a PREA violation until after this disciplinary case was brought against him. Plaintiff otherwise does not cite the fact he was exercising a specific constitutional right, such as filing a grievance or a civil rights case, before Sgt. Guzman brought the disciplinary case against him on February 21, 2017. Accordingly, the undersigned respectfully recommends that Plaintiff's retaliation claim regarding the bringing of Disciplinary Case 20170183409 be dismissed with prejudice as frivolous and/or for failure to state a claim.

Plaintiff further claims that Sgt. Guzman retaliated against Plaintiff on or about March 19, 2017 after Plaintiff had filed a grievance against him for his actions taken in Disciplinary Case No. 20170183409. Plaintiff alleges that Sgt. Guzman locked Plaintiff inside a rescue yard, searched Plaintiff's cell, destroyed certain personal property of Plaintiff's, and confiscated other items. Sgt. Guzman allegedly told Plaintiff that he took these actions against Plaintiff due to the grievance brought by Plaintiff against her.

Plaintiff alleges that, in connection with his search of Plaintiff's cell, Sgt. Guzman brought a false disciplinary case against Plaintiff and charging him with possession of contraband and tampering with a locking mechanism. Plaintiff was initially found to be guilty of the charges. However, through a Step 2 grievance, Plaintiff's guilty verdict was overturned. Plaintiff further alleges that Sgt. Guzman continued his retaliation on March 27, 2017, by taking Plaintiff's offender ID, which interfered with Plaintiff's ability to be issued meals, lay-ins, receive mail, check out books, and participate in recreation. Lastly, Plaintiff alleges that Sgt. Guzman retaliated against Plaintiff on March 3, 2018 by

ordering another officer to seize Plaintiff's drinking cup and commissary items worth $100.

Plaintiff's allegations suggest that he exercised his constitutional right to file a grievance against Sgt. Guzman in March 2017 and that, but for his decision to file this grievance, Sgt. Guzman would not have engaged in the retaliatory acts of taking and/or destroying Plaintiff's personal property, instituting a disciplinary case against Plaintiff that was ultimately overturned, and confiscating his ID card. Accordingly, it is respectfully recommended that Plaintiff's retaliation claims against Sgt. Guzman for actions taken after Plaintiff filed his grievance in March 2017 be retained against her in her individual capacity and that service be ordered on this defendant.

### E.  Due Process (Disciplinary Hearings)

Plaintiff claims that Sgt. Guzman and Capt. Ambriz violated his due process rights in connection with Plaintiff's two disciplinary hearings. The Supreme Court has held that "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been [overturned]." *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994). "It is well-settled under *Heck* that a plaintiff who has been convicted of a crime cannot recover damages for an alleged violation of his constitutional rights if that 'violation arose from the same facts attendant to the charge for which he was convicted . . . .'" *Bush v. Strain*, 513 F.3d 492, 497 (5th Cir. 2008) (quoting *Heck*, 512 U.S. at 486-87).

The *Heck* doctrine also operates to bar prisoners from seeking injunctive relief or otherwise challenging the punishment imposed by a disciplinary proceeding through a § 1983 action.  *See Edwards v. Balisok*, 520 U.S. 641, 648 (1997) ("[plaintiff's] claim for declaratory relief and money damages, based on allegations ... that necessarily imply the invalidity of the punishment imposed, is not cognizable under § 1983"); *Clarke v. Stalder*, 154 F.3d 186, 189-91 (5th Cir. 1998) (en banc) (applying *Heck* to bar plaintiff's constitutional claims for injunctive relief that were fundamentally intertwined with his request for restoration of good-time credits).

Plaintiff claims that Sgt. Guzman violated his due process rights in connection with Disciplinary Case No. 20170183409 by: (1) informing Plaintiff that the shower camera would not be reviewed and that Officer Contreras's report regarding Plaintiff's masturbation charge constituted the evidence in the case; and (2) improperly recommending to the disciplinary hearing officer that Plaintiff be placed on thirty-days restrictions.  Plaintiff ultimately received punishment in Disciplinary Case No. 20170183409 in the form of 30 days property restrictions and thirty days loss of commissary and recreation.

The Supreme Court has held that due process protections attach only to those punishments that impose an atypical and significant hardship in relation to ordinary incident of prison life, or to those that extend the length or duration of confinement. *Sandin v. Conner*, 515 U.S. 472, 484-86 (1995).  In other words, "[p]risoners charged with institutional rules violations are entitled to rights under the Due Process Clause only when the disciplinary action may result in a sanction that will infringe upon a

constitutionally protected liberty interest." *Hall v. Thaler*, No. H-07-0763, 2010 WL 883730, *6 (S.D. Tex. Mar. 11, 2010).

None of the sanctions imposed on Plaintiff in Disciplinary Case No. 20170183409 constituted an "atypical and significant hardship" or otherwise adversely affected the duration of Plaintiff's sentence. The imposition of commissary, recreation, and property restrictions do not implicate a constitutionally-protected protected liberty interest. *See Malchi v. Thaler*, 211 F.3d 953, 958 (5th Cir. 2000); *Madison v. Parker*, 104 F.3d 765, 768 (5th Cir. 1997).

With regard to Disciplinary Case No. 20170212635, Plaintiff claims that Capt. Ambriz violated his due process rights by altering whether Plaintiff had 24-hour notice to prepare for his disciplinary hearing. Captain Ambriz found Plaintiff guilty of the charged offenses and imposed punishment that included the loss of forty-five days of good time credits. Plaintiff appealed the guilty finding in Disciplinary Case No. 20170212635, and the guilty finding was eventually overturned in Plaintiff's Step 2 grievance.

Plaintiff's successful Step 2 grievance cured any error in the disciplinary proceeding. *See Wilson v. Mossbarger*, No. 3:14-CV-244, 2017 WL 1449776, at *3 (S.D. Tex. Apr. 4, 2017) (citing *Ard v. Leblanc*, 404 F. App'x 928, 929 (5th Cir. 2010)). Because no liberty interest was implicated, Plaintiff has failed to state a due process claim with respect to Capt. Ambriz's actions. *See Ard*, 404 F. App's at 929 (recognizing that the Constitution "demands due process, not error-free decision-making") (internal quotations and citation omitted).

Accordingly, it is respectfully recommended that Plaintiff's due process claims against Sgt. Guzman and Capt. Ambriz arising from his disciplinary proceedings be dismissed as frivolous and/or for failure to state a claim.

### F. Due Process (Personal Property)

Plaintiff complains about the confiscation and/or destruction of personal property in his cell and the taking of his inmate ID card and commissary products. The Fourteenth Amendment of the Constitution provides that no State shall "deprive any person of life, liberty, or property without due process of law." U.S. Const. amend. XIV § 1. The Supreme Court has held that a random and unauthorized intentional deprivation of property does not violate the Due Process Clause if the State provides an adequate post-deprivation remedy. *See Hudson v. Palmer*, 468 U.S. 517, 534-35 (1984); *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). A claimant must either take advantage of the available remedies or show that the available remedies are inadequate. *Hudson*, 468 U.S. at 534-35.

Texas law provides him with possible post-deprivation remedies. Texas law allows recovery of monetary damages for the loss of property that has been taken without authorization. *See Murphy v. Collins*, 26 F.3d 541, 543 (5th Cir. 1994) (in Texas, the tort of conversion fulfills this requirement); *see also Beam v. Voss*, 568 S.W.2d 413, 420-21 (Tex. Civ. App.– San Antonio 1978, no writ) (conversion is the unauthorized and unlawful assumption and exercise of dominion and control over the personal property of another, to the exclusion of, or inconsistent with the owner's rights). In addition, state

law specifically provides that inmates may recover up to $500.00 on a claim that the TDCJ lost or damaged personal property. *See* Tex. Gov't Code § 501.007.

Because Texas law provides an adequate post-deprivation remedy, the confiscation and/or destruction of Plaintiff's personal property does not appear to state a violation of the Due Process Clause. *See Hudson*, 468 U.S. at 536 (noting that, even when a prisoner's property was intentionally destroyed, such destruction did not violate the Fourteenth Amendment because state law provided the prisoner with an adequate post-deprivation remedy).

A prisoner-plaintiff may bring suit in federal court for property loss only if relief is denied in state court on grounds other than the merits of his claim. *See Thompson v. Steele*, 709 F.2d 381, 383 n.3 (5th Cir. 1983). The burden is on the inmate to show that the post-deprivation remedy is inadequate. *Myers v. Klevenhagen*, 97 F.3d 91, 94 (5th Cir. 1996). Plaintiff does not indicate in his complaint that he has filed suit in state court pursuant to § 501.007 or for conversion. Because Plaintiff has not pursued his state court remedies he cannot allege that the post-deprivation remedy available to him is inadequate. As such, Plaintiff's allegations regarding the confiscation and/or destruction of his personal property fail to state a cognizable constitutional claim. It is respectfully recommended, therefore, that these due process claims be dismissed as frivolous and/or for failure to state a claim for relief.

V.   **CONCLUSION.**

For the reasons stated above, it is respectfully recommended that the Court retain Plaintiff's retaliation claims against Sgt. Guzman for alleged actions taken after Plaintiff

filed his grievance in March 2017, and that service be ordered on Sgt. Guzman in her individual capacity. It is respectfully recommended further that Plaintiff's claims for money damages against all Defendants in their official capacities be dismissed as barred by the Eleventh Amendment. Lastly, it is respectfully recommended that Plaintiff's remaining claims against the remaining defendants be dismissed with prejudice for failure to state a claim upon which relief can be granted and/or as frivolous pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii), 1915A(b)(1).

    Respectfully submitted this 17th day of June, 2019.

                                                                    B. JANICE ELLINGTON
                                                                    UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

The Clerk will file this Memorandum and Recommendation and transmit a copy to each party or counsel.  Within **FOURTEEN (14) DAYS** after being served with a copy of the Memorandum and Recommendation, a party may file with the Clerk and serve on the United States Magistrate Judge and all parties, written objections, pursuant to Fed. R. Civ. P. 72(b), 28 U.S.C. § 636(b)(1), General Order No. 2002-13, United States District Court for the Southern District of Texas.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within FOURTEEN (14) DAYS after being served with a copy shall bar that party, except upon grounds of *plain error,* from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court.  Douglass v. United Servs. Auto Ass'n, 79 F.3d 1415 (5th Cir. 1996) (en banc).